UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                                                                                   :

UNITED STATES OF AMERICA,               :

                     -against-                             :          14 Cr. 186 (WHP)

TOYOTA MOTOR CORPORATION,        :          OPINION & ORDER

                     Defendant.                         :
------------------------------------------------------------X

WILLIAM H. PAULEY III, United States District Judge:

        On August 7, 2017, the Government moved this Court to enter a <u>nolle prosequi</u> on the basis that Defendant Toyota Motor Corporation ("Toyota") complied with the terms of its deferred prosecution agreement (the "DPA"). For the reasons that follow, the Government's application is granted.

### BACKGROUND

        This criminal action concerns Toyota's concealment of, and failure to disclose, two safety-related issues causing unintended acceleration in its vehicles. In March 2014, Toyota and the Government entered into a DPA under which Toyota agreed to pay a $1.2 billion criminal penalty and cooperate with an independent monitor for a three-year period. With the DPA expiring in August 2017, the Government informed this Court that based on Toyota's compliance with the terms of the DPA, it would not proceed with a prosecution of Toyota. (ECF No. 11, at ¶ 5.)

        Two days after the Government filed its request for dismissal, Roger Hogan, a non-party, objected to such dismissal, and requested "an opportunity to present evidence to the Court by way of a hearing" regarding Toyota's non-compliance under the DPA. (ECF No. 13, at 1.) Hogan principally alleges that Toyota covered up and failed to disclose a defect resulting in

the loss of power steering and power assist for brakes in its vehicles. Based on Toyota's alleged failure to remediate these safety issues, Hogan claims that the one-count wire fraud charge against Toyota should not be dismissed.

DISCUSSION

The principal issue arising from Hogan's objection is whether this Court should invoke its supervisory power to review the parties' actions during the term of the DPA. Generally, a district court's supervisory power is "an extraordinary one which should be sparingly exercised." United States v. Jones, 433 F.2d 1176, 1181–82 (D.C. Cir. 1970). With respect to prosecutorial decisions "that take place outside the courthouse," the court's supervisory power is "extremely limited, if it exists at all." United States v. Lau Tung Lam, 714 F.2d 209, 210 (2d Cir. 1983). That is particularly true in the context of a DPA—the "court plays no role in monitoring the defendant's compliance with the DPA's conditions." United States v. Fokker Servs. B.V., 818 F.3d 733, 744 (D.C. Cir. 2016).

Where a non-party alleges a defendant's non-compliance under a DPA, this Court's authority to invoke its supervisory power is limited to situations that transgress the bounds of lawfulness and propriety, such as executive misconduct or an abuse of power. See United States v. HSBC Bank USA, N.A., 863 F.3d 125, 137 (2d Cir. 2017). In HSBC, the Second Circuit alluded to the rare scenario in which invocation of the supervisory power would be warranted: "if misconduct in the implementation of a DPA came to a district court's attention (for example, through a whistleblower filing a letter with the court), the district court might very well be justified in invoking its supervisory power sua sponte to monitor the implementation of the DPA or take other appropriate action." HSBC, 863 F.3d at 137. Hogan's letter ostensibly

qualifies as the type of "whistleblower" notice that could justify a court's use of supervisory power.

But there are two things to note with respect to situations warranting judicial intervention. First, HSBC suggests that there must be egregious conduct or bad faith on the part of the Government. And that makes sense because the court's supervisory power is constrained by the "presumption of regularity that federal courts are obliged to ascribe to prosecutorial conduct and decisionmaking." HSBC, 863 F.3d at 136. Second, the egregiousness of the conduct must rise to a point where dismissal of charges would be "clearly contrary to manifest public interest." United States v. Pimentel, 932 F.2d 1029, 1033 n.5 (2d Cir. 1991). As the HSBC court observed, the public interest to be protected is "severely cabined" to situations in which "the prosecutor appears motivated by bribery, animus towards the victim, or a desire to attend a social event rather than trial—in other words, bad faith." HSBC, 863 F.3d at 141 (citing In re Richards, 213 F.3d 773, 787–88 (3d Cir. 2000)).

Here, none of those factors exist. Hogan has not alleged that the Government engaged in any bad faith, harbors animus toward any party, or possesses an improper motive. Moreover, though Hogan accuses Toyota of non-compliance under the DPA, there is a legitimate question as to whether the DPA covers the type of defects that he complains about. The DPA concerns defects relating to unintended acceleration; Hogan seeks relief regarding power-off issues, or unintended deceleration.

And while Rule 48(a) of the Federal Rules of Criminal Procedure vests authority in this Court to dismiss an indictment, information, or complaint, its role in exercising that authority—including a decision to deny the Government's request for dismissal—is limited to protecting defendants from prosecutorial harassment, such as "charging, dismissing, and

recharging, when the Government moves to dismiss an indictment over the defendant's objection." Rinaldi v. United States, 434 U.S. 22, 29 n.15 (1977). Thus, absent any evidence of bad faith, this Court lacks the authority to second-guess the Government's decision seeking dismissal, and must instead ascribe the presumption of regularity to the Government.

Having said that, back on March 20, 2014, when this Court approved the DPA, it expressed the view after reading the Statement of Facts—which Toyota agreed were true and accurate—that those facts presented a "reprehensible picture of corporate misconduct." (Transcript dated Mar. 20, 2014, ECF No. 7, at 9:18.) This Court also expressed the hope that the Government would seek to hold those individuals who engaged in the underlying conduct accountable for their wrongdoing. Regrettably, the payment of a $1.2 billion fine and the appointment of a monitor appear to have concluded the Government's investigation into this tragic episode.

The sentiments Circuit Judge Pooler expressed in her concurrence in HSBC regarding deferred and nonprosecution agreements are particularly salient in this case. The law as it stands today vests prosecutors with the "sole discretion to decide if [a defendant corporation] adequately complied with [a DPA], allowing the prosecution to act as prosecutor, jury, and judge." HSBC, 863 F.3d at 143. In effect, the prosecution supplants a court's role of performing the core judicial function of "adjudicating guilt and imposing sentence." HSBC, 863 F.3d at 143. As DPAs are used more frequently to address corporate liability, they introduce opaqueness to criminal proceedings and have created a cottage industry of monitorships doled out by the Department of Justice.

This is, of course, a matter of policy and therefore outside of this Court's wheelhouse. But Congress should step in to clarify the contours of a court's authority in

connection with corporate prosecutions—in this Court's view, there is a real risk that these prosecutorial tools are viewed merely as a cost of doing business instead of mechanisms to hold corporations and the individuals behind them accountable for their misconduct.

In any event, if Hogan has legitimate evidence regarding the defects he complains of, he is free to provide it to the U.S. Attorney's Office, which has assured this Court that it will "consider any evidence . . . of criminal conduct venued in this District." (ECF No. 14, at 2.)

## CONCLUSION

Accordingly, recognizing that the Executive branch has the discretion to dismiss criminal charges where, as here, the defendant has, in the Government's judgment, fully complied with the terms of the DPA, this Court grants the Government's request to so-order the nolle prosequi dismissing with prejudice the wire fraud charge against Toyota.

Dated: October 5, 2017
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.